IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

NORTHERN DIVISION

| | |
|---|---|
| GPIII, INC., et al.,<br><br>      Plaintiffs,<br><br>vs.<br><br>HYRUM CITY, et al.,<br><br>      Defendants. | ORDER<br><br>AND<br><br>MEMORANDUM DECISION<br><br><br>Case No. 1:04-CV-91 TC |

  On April 27, 2005, Plaintiffs filed a motion seeking permission to file a Second Amended Complaint.  Simultaneously, they filed a Motion to Alter or Amend the Order of April 13, 2005, which dismissed certain claims with prejudice and the remainder of claims without prejudice.  On August 4, 2005, the court granted the Plaintiffs' Motion to Alter or Amend and changed its Order so that all claims were dismissed without prejudice.  In the same order, the court requested briefing on the issue of whether granting the Plaintiffs' motion to amend the complaint would be futile.  The court received additional briefing and the matter came before the court during a November 16, 2005 hearing.

  The Defendants contend that the Plaintiffs do not have the right to amend because the court has issued an order dismissing all of Plaintiffs' claims without prejudice.  They characterize the Order as a final judgment, but it is not.  Accordingly, the Defendants' reliance on the rule articulated in <u>The Tool Box, Inc. v. Ogden City Corp.</u>, 419 F.3d 1084, 1087 (10th Cir. 2005) ("once judgment is entered, the filing of an amended complaint is not permissible until judgment

is set aside or vacated"), is misplaced.

The court finds that the Plaintiffs' Motion to Amend is procedurally proper, as is the court's decision to consider the motion to amend. Having reviewed the proposed second amended complaint, as well as the parties' briefs, the court finds that giving Plaintiffs leave to file an amended complaint would not be futile. Accordingly, the court GRANTS Plaintiffs' Motion to file the proposed Second Amended Complaint.

Also pending before the court is Plaintiffs' Motion to Strike Joinder of Hyrum City to Supplemental Reply Memorandum and Limit Argument of Cache County Defendants. For the reasons set forth below, the court DENIES Plaintiffs' Motion to Strike.

## ANALYSIS

### The Court May Consider the Plaintiffs' Motion to Amend the Complaint.

The Defendants assert that the court may not consider Plaintiffs' motion for leave to amend the complaint because "once judgment is entered the filing of an amended complaint is not permissible until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 56(e) or 60(b)." Cooper v. Shumway, 780 F.2d 27, 29 (10th Cir. 1985) (quoted in Defs.' Mem. Re: Fed. R. Civ. P. 59(e) and Pls.' Request for Leave to Amend (Docket no. 25) (hereinafter "Defs.' Mem. Re: Leave to Amend"), at 1.); see also The Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084, 1087 (10th Cir. 2005) (quoting Cooper for same proposition). The court does not disagree with the rule cited by the Plaintiffs. But the rule simply is not applicable here because no final judgment has been entered.

Defendants also contend that "plaintiffs request post-judgment leave to amend their complaint pursuant to Rule 59(e)." (Defs.' Mem. Re: Leave to Amend at 2.) This

mischaracterizes the Plaintiffs' motion, which was filed under Federal Rule of Civil Procedure 15.

The court's order dismissing all claims without prejudice is not a final judgment. "Final decisions are those that end the litigation on the merits and leave nothing for the court to do but execute the judgment." Utah v. Norton, 396 F.3d 1281, 1286 (10th Cir. 2005) (internal citations and quotation marks omitted). Here, the court's August 4, 2005 Order did not terminate all matters because, in addition to dismissing claims without prejudice, the court expressly gave counsel leave to submit further briefing on whether the court should grant Plaintiffs' motion to amend the complaint. The Order reads:

> IT IS FURTHER ORDERED that counsel have leave of Court to file a five page memorandum addressing the impact of the Court's granting of Plaintiffs' Rule 59 F.R.C.P. motion to amend the April 13, 2005 judgment on Plaintiffs' motion to file a Second Amended Complaint [as described in the specified briefing schedule].

(Aug. 4, 2005 Order at 2 (Docket No. 223 in 1:02-CV-129).) The court clearly intended to, and did, leave the case open to evaluate issues for which the court identified a need for resolution.

> Although a dismissal without prejudice is usually not a final decision, where the dismissal finally disposes of the case so that it is not subject to further proceedings in federal court, the dismissal is final and appealable. "The critical determination [as to whether an order is final] is whether plaintiff has been effectively excluded from federal court under the present circumstances."

Amazon, Inc. v. Dirt Camp, Inc., 273 F.3d 1271, 1275 (10th Cir. 2001) (emphasis added) (internal citations omitted). Given the language of the court's August 4, 2005 Order, the Plaintiffs were not "effectively excluded from federal court under the present circumstances." Indeed, the docket does not contain any entry or document expressly stating that a final judgment has been entered in the case. See Utah v. Norton, 396 F.3d at 1286 (when there is uncertainty

3

about whether final judgment has been entered, for example due to sequence of the parties' pleadings and the court's rulings, Rule 58 requires a separate document expressly stating that judgment is final and appealable).

Moreover, the court's dismissal of claims without prejudice clearly gave Plaintiffs the opportunity to obtain leave to re-file their complaint and continue the litigation.  See, e.g., Murray v. Gilmore, 406 F.3d 708, 712-13 (D.C. Cir. 2005) (noting that district court's dismissal without prejudice was more akin to a grant of leave to amend under Rule 15(c));  Dubicz v. Commonwealth Edison Co., 377 F.3d 787, 790 (7th Cir. 2004) (holding that dismissal without prejudice was not final judgment – particularly given district court's stated intent to give plaintiffs the opportunity to amend their complaint – so district court had jurisdiction to consider the motion for leave to file second amended complaint).  "With a limited exception, a dismissal without prejudice 'does not qualify as an appealable final judgment because the plaintiff is free to re-file the case.'" Dubicz, 377 F.3d at 790 (internal citations omitted); see also Pascack Valley Hosp., Inc. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, 398 (3d Cir. 2004) ("Generally, an order which dismisses a complaint without prejudice is neither final nor appealable because the deficiency may be corrected by the plaintiff without affecting the cause of action.") (internal citations omitted).

**Allowing Plaintiffs to Amend Their First Amended Complaint Would Not Be Futile.**

Federal Rule of Civil Procedure 15(a) makes clear that leave to file an amended complaint shall be freely given when justice so requires.  Fed. R. Civ. P. 15(a).  Still, because the permissive period within which to amend the complaint has passed, the decision to grant leave is within the court's discretion.  Id.; Pallottino v. City of Rio Rancho, 31 F.3d 1023, 1027 (10th Cir.

1994). The court may deny leave to amend if the filing of an amended complaint, as proposed by the Plaintiffs, would be futile. "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." Gohier v. Enright, 186 F.3d 1216, 1218 (10th Cir. 1999).

Defendants assert that allowing Plaintiffs to amend their complaint would be futile because they cannot establish standing and cannot state a claim for relief under 42 U.S.C. § 1983. The court disagrees.

**Plaintiffs' Allegations in the Proposed Second Amended Complaint**

The Plaintiffs, who market and sell Kirby Company ("Kirby") vacuum cleaners, consist of Kirby distributor GPIII, Inc. (hereinafter "Distributor") and independent Kirby dealers (G. Paul Reynolds, Parham Rezacipour, and Pedro Silvaz, Jr.) (hereinafter the "Dealers"). Kirby, which manufactures the vacuum cleaners being sold by the Plaintiffs, is not a party to the lawsuit.

The only method by which Kirby sells and markets its products is through independent contract distributors and, subsequently, independent contract dealers, who actually engage in door-to-door solicitation and in-home demonstrations. Kirby factory distributors purchase Kirby cleaning systems directly from the Kirby factory and sell the systems to independent Kirby dealers with whom the distributor has contracted. Kirby area distributors purchase Kirby systems from a factory distributor and otherwise operate similarly to the factory distributors by selling the systems to independent Kirby dealers. The independent Kirby dealers (individuals, not corporate entities) do the actual door-to-door solicitation and in-home demonstrations, with assistance from the factory and area distributors.

The Plaintiffs have named Hyrum City, the mayor of Hyrum City, Cache County, and the Cache County Sheriff as Defendants. Each of the individual Defendants is named in his official

capacity. Accordingly, Plaintiffs have alleged a § 1983 municipal liability action against Hyrum City and Cache County, claiming that the City and County have violated their First Amendment rights through enactment and enforcement of a solicitation and licensing regulation scheme enacted by the City.

**Standing Under 42 U.S.C. § 1983**

The Defendants contend that the Plaintiffs do not have standing under 42 U.S.C. § 1983 to bring their pre-enforcement facial challenge to the City's solicitation ordinance. They suggest that if the Plaintiffs want to obtain redress for alleged violation of their constitutional rights, they are free to bring their claim under the Declaratory Judgment Act. In support of their argument, they assert that Congress did not intend to provide the relief that Plaintiffs seek under 42 U.S.C. § 1983 (i.e., declaratory relief in a pre-enforcement challenge). The Defendants' position is incorrect.

The Declaratory Judgment Act does not provide a private right of action to the Plaintiffs or give this court subject matter jurisdiction. "It is well established that the Declaratory Judgment Act 'enlarged the range of remedies available in the federal courts but did not extend their jurisdiction.'" Utah Animal Rights Coalition v. Salt Lake City Corp., 371 F.3d 1248, 1265 (10th Cir. 2004) (quoting Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 671 (1950)). There must be an independent basis for jurisdiction in order to obtain the remedy provided by the Declaratory Judgment Act. Amalgamated Sugar Co. v. Bergland, 664 F.2d 818, 822 (10th Cir. 1981). That is, the Plaintiffs must still establish that they have a private cause of action. Section 1983 provides that private cause of action. See, e.g., Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924, 934 (1982) (noting that purpose of section 1983 was to enforce individual citizens'

rights guaranteed under the United States Constitution by providing a remedy for violation of those rights by a state actor); Monell v. Department of Social Servs. of the City of New York, 436 U.S. 658, 700-01 (1978) ("[T]here can be no doubt that § 1 of the Civil Rights Act [precursor to § 1983] was intended to provide a remedy, to be broadly construed, against all forms of official violation of federally protected rights."). During the Senate debate on § 1 of the Civil Rights Act, Senator Thurman stated:

> This section [§ 1, the precursor to § 1983] relates wholly to civil suits . . . . Its whole effect is to give to the Federal Judiciary that which now does not belong to it – a jurisdiction that may be constitutionally conferred upon it, I grant, but that has never yet been conferred upon it. It authorizes any person who is deprived of any right, privilege, or immunity secured to him by the Constitution of the United States, to bring an action against the wrong-doer in the Federal courts, and that without any limit whatsoever as to the amount in controversy . . . .

Monell, 436 U.S. at 686 (quoting Senator Thurman's statement made during debate on the Civil Rights Act of 1871) (emphasis added). Indeed, the Act specifically provides for declaratory, as well as monetary and injunctive, relief. See Monell, 436 U.S. at 690 ("Local governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief").

Also, no case law supports the Defendants' proposition that standing requirements under § 1983 are somehow more rigorous than Article III standing requirements. Rather, courts analyzing first amendment facial challenges brought under § 1983 have relied on the Article III standing analysis and nothing more. See, e.g., Virginia v. American Booksellers Ass'n, 484 U.S. 383, 390, 392-93 (1988) (finding that plaintiffs bringing pre-enforcement facial challenge under § 1983 had standing, as analyzed under Article III); Pacific Frontier v. Pleasant Grove City, 414 F.3d 1221, 1228-29 (10th Cir. 2005) (same); Association of Community Organizations for Reform Now ("ACORN") v. Municipality of Golden Colorado, 744 F.2d 739, 745 n.3 (10th Cir.

1984) (same).  Accordingly, the court analyzes the issue of Plaintiffs' standing using the Article III analysis.

Plaintiffs have the burden of proving that they have Article III standing.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  To establish Article III standing, the Plaintiffs must show that a case or controversy exists.  Id. at 559-60.  Specifically, the Plaintiffs must show that they have suffered an injury-in-fact, that there is a causal connection between their injuries and the challenged conduct (the injuries must be "fairly traceable" to the challenged conduct of the Defendants), and that it is likely the injury will be redressed by a decision favorable to the Plaintiffs.  Id. at 560-61.  The "injury in fact" must be "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical'."  Id. at 560 (internal citations and quotation marks omitted).

In addition to the constitutional "case or controversy" requirement, courts must take into account prudential considerations to determine whether the plaintiff has standing.  See Warth v. Seldin, 422 U.S. 490, 499 (1975).  That is, "even when the plaintiff has alleged injury sufficient to meet the 'case or controversy' requirement, . . . the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties."  Id.  In the context of a facial challenge to an ordinance under the First Amendment, however, the prudential standing requirements are relaxed.  Virginia v. American Booksellers Ass'n, 484 U.S. 383, 392 (1988); Essence, Inc. v. City of Federal Heights, 285 F.3d 1272, 1287 n.13 (10th Cir. 2002).  As the United States Supreme Court noted:

> Even if an injury in fact is demonstrated, the usual rule is that a party may assert only a violation of its own rights.  However, in the First Amendment context, "'[l]itigants . . . are permitted to challenge a statute not because their own rights of

>  free expression are violated, but because of a judicial prediction or assumption
>  that the statute's very existence may cause others not before the court to refrain
>  from constitutionally protected speech or expression.'"

Id. at 392-93 (internal citations omitted).

In cases involving a pre-enforcement challenge to the language of a statute or regulation, a plaintiff may establish standing by showing either a credible threat of prosecution or the statute's chilling effect on free expression. Mangual v. Rotger-Sabat, 317 F.3d 45, 56-57 (1st Cir. 2003). In such a case, the evidentiary bar to establish standing is low. See, e.g., Babbitt v. United Farm Workers Nat'l Union, 442 U.S. 289, 298 (1979) (standing satisfied where the plaintiff "has alleged an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution" under that statute); Mangual, 317 F.3d at 57 ("As to whether a First Amendment plaintiff faces a credible threat of prosecution, the evidentiary bar that must be met is extremely low."); New Hampshire Right To Life Political Action Committee v. Gardner, 99 F.3d 8, 15 (1st Cir. 1996) ("[C]ourts will assume a credible threat of prosecution in the absence of compelling contrary evidence.").

### Individual Plaintiffs (the Dealers)

The Individual Plaintiffs allege an interest in engaging in commercial speech, have expressed a desire to solicit in Hyrum, and have alleged actual solicitation and/or an intent to solicit in Hyrum. They allege that they have refrained from soliciting for fear of criminal prosecution under the solicitation ordinance. There is no question that a decision favorable to the individual Plaintiffs would redress their injuries. Based on the allegations, and the low evidentiary bar to establish standing, the court finds that all individual Plaintiffs (the Dealers)

have standing to pursue this action.

The Organizational Plaintiffs (the Distributors)

The court finds that the Distributor Plaintiffs have standing to pursue this action. The Distributors have alleged their own First Amendment interests in advertising their wares to the general public. Because the avenue by which they have chosen to sell their product (door-to-door solicitation) is the sole avenue used by Kirby and its Distributors, the solicitation ordinance does indeed affect them and their constitutional rights. Whether or not the Dealers are independent contractors of the Distributors is of no consequence.

Also, while the Distributor Plaintiffs may not face direct threat of criminal prosecution, they have amply alleged that they have refrained from selling their wares in Hyrum because of the burdens placed on their sales force and potential criminal sanctions faced by the Dealers. See, e.g, Mangual v. Rotger-Sabat, 317 F.3d 45, 56-57 (1st Cir. 2003) (in cases involving a pre-enforcement challenge to the language of a statute or regulation, a plaintiff may establish standing by showing either a credible threat of prosecution or the statute's chilling effect on free expression). The Distributors' only method by which they can advertise their wares is through the use of the Dealers, who are directly affected by the statute. The interests of the Dealers and the Distributors are intertwined.

**State Action Under 42 U.S.C. § 1983 in First Amendment Cases**

Defendants also contend that even if Plaintiffs have standing, Plaintiffs cannot state a claim for which relief may be granted under 42 U.S.C. § 1983. Section 1983 provides, in relevant part, that "[e]very person, who under color of any statute, ordinance, regulation, custom or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . .

to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." 42 U.S.C. § 1983.

Plaintiffs assert that the mere existence of the ordinance is not enough to establish "state action" under the elements of Section 1983, and they cite to Monell v. Department of Social Servs. of the City of New York, 436 U.S. 658 (1978), to support of their position. The United States Supreme Court in Monell stated that "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. . . . [But] Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." 436 U.S. at 690-91.

Monell did not address the specific issue before the court – that is, whether, in a First Amendment context, the enactment of an ordinance, without more, is state action for purposes of § 1983. Moreover, despite Defendants' contention, Monell does not foreclose the Plaintiffs' position that they have stated a cause of action under Section 1983. "[W]hen execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," municipalities may be directly liable under Section 1983 for monetary, declaratory, or injunctive relief. Monell, 436 U.S. at 690, 694. Enactment of an ordinance is execution of the government's policy. Such a conclusion is at least implicit in cases finding municipal liability in a section 1983 case where the municipal ordinance was challenged before any enforcement action was taken. See, e.g.,

11

Virginia v. American Booksellers Ass'n, 484 U.S. 383, 390, 392-93 (1988) (holding that pre-enforcement facial challenge under § 1983 was valid claim); Pacific Frontier v. Pleasant Grove City, 414 F.3d 1221, 1228-29 (10th Cir. 2005) (finding facial challenge in § 1983 case valid and stating that "[w]e decline to hold that solicitors must first apply for and be denied a license before challenging a licensing ordinance's constitutionality."); Utah Licensed Beverage Ass'n v. Leavitt, 256 F.3d 1061, 1065-66, 1077 (10th Cir. 2001) (in § 1983 action seeking declaratory and injunctive relief, court applied Central Hudson commercial speech analysis, found that statute restricting liquor advertising was unconstitutional, and ordered injunctive relief); Association of Community Organizations for Reform Now ("ACORN") v. Municipality of Golden, Colorado, 744 F.2d 739, 744 (10th Cir. 1984) ("Applying for and being denied a license or an exemption is not a condition precedent to bringing a facial challenge to an unconstitutional law."). These cases support the proposition that enactment of an ordinance which has a chilling effect on speech is sufficient, without more, to constitute state action under § 1983. That is, in the First Amendment free speech context, courts have found that plaintiffs who suffer a chilling effect on their speech as the result of enactment of an ordinance have suffered injury under § 1983. Here, Plaintiffs have sufficiently alleged that the Defendants enacted or enforced the solicitation ordinance under color of law and that the ordinance is an official policy of the city enacted by officials with final policy making authority. Accordingly, the Plaintiffs have stated a cause of action under 42 U.S.C. § 1983. Granting leave to amend their complaint would not be futile.

**Plaintiffs' Motion to Strike is Partly Moot and Partly Premature.**

Plaintiffs have filed a Motion to Strike Joinder of Hyrum City to Supplemental Reply Memorandum and Limit Argument of Cache County Defendants. They contend that Hyrum City

has waived its right to respond to Plaintiffs' Response to Supplemental Memorandum of Cache County Defendants addressing whether filing of an amended complaint would be futile. They also contend that Cache County and its related defendants are collaterally estopped from opposing Plaintiffs' challenge to the constitutionality of the ordinance.

Because the court has granted the Plaintiffs leave to file an amended complaint, the portion of Plaintiffs' motion to strike regarding Hyrum City Defendants is moot. As for the Plaintiffs' argument that Cache County is precluded from opposing the Plaintiffs' challenge to the ordinance, the merits of the Plaintiffs' case is not currently before the court. Accordingly, the court will not consider Plaintiffs' collateral estoppel argument. For those reasons, the Plaintiffs' Motion to Strike is DENIED.

## ORDER

For the foregoing reasons, the court ORDERS as follows:

1. Plaintiffs' Motion to File Amended Complaint is GRANTED.

2. Plaintiffs' Motion to Strike Joinder of Hyrum City to Supplemental Reply Memorandum and Limit Argument of Cache County Defendants is DENIED.

DATED this 6th day of December, 2005.

BY THE COURT:

*Tena Campbell*

TENA CAMPBELL
United States District Judge